# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WASHINGTON COUNTY HEALTH CARE AUTHORITY, INC., et al.,<br><br>Plaintiffs<br>V.<br><br>BAXTER INTERNATIONAL INC., et al.,<br>Defendants | Case No. 1:16-cv-10324<br><br>**ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS** |

    This Order Regarding Production Of Electronically Stored Information And Paper Documents ("ESI Protocol") shall govern the parties in the above-captioned case and any related actions that may later be consolidated with this case (collectively, the "Litigation").

I. **GENERAL PROVISIONS**

    A.   **Applicability:** This Stipulation and Order will govern the production of ESI and Paper Documents.

    B.   **Cooperation:** The Parties agree that they will adhere to the principles of cooperation, reasonableness, and proportionality, as set forth in the Federal Rules of Civil Procedure and as interpreted by federal case law and in the Seventh Circuit Electronic Discovery Committee Principles Relating to the Discovery of Electronically Stored Information, as they conduct discovery in this matter.

    C.   **ESI Liaisons**

        1.   **Designation:** Each party agrees to designate an ESI Liaison that is knowledgeable about and responsible for discussing matters related to its ESI. Any party is free to change their designated ESI Liaison by providing written notice to the other parties.

        2.   **Duties of ESI Liaison:** Each ESI Liaison will be, or have access to those who are, knowledgeable about the party's electronic systems and capabilities.

        3.   **ESI Issue Resolution:** The Parties will rely on the e-discovery liaisons, as needed, to meet and confer about matters involving ESI and to help resolve disputes without court intervention. The Parties agree to work in good faith to

schedule conferences concerning discovery of ESI when their e- discovery liaisons are available.

D. **Definitions**

1. **"Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape or other real or virtualized devices or media.

2. **"Metadata"** means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

II. <u>GENERAL PRODUCTION FORMAT PROTOCOLS</u>

A. **TIFFs:** All production images will be provided as single page Group IV TIFFs of at least 300 dpi resolution. Page size shall be 8.5 x 11 inches unless in the reasonable judgment of the producing party, a particular item requires a different page size. Each image will use the Bates number of the first page of the document as its unique file name. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). Hidden content, tracked changes or edits, comments, notes and other similar information viewable within the native file shall also be imaged so that this information is captured on the produced image file.

B. **Text Files:** Each ESI item produced under this order shall be accompanied by a text file. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item. Emails and other ESI will be accompanied by extracted text taken from the electronic file itself.

C. **Production of Native Items:** The parties agree that ESI shall be produced as TIFFs with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto. The exception to this rule shall be spreadsheet-application files (*e.g.*, MS Excel), personal databases (*e.g.*, MS Access), and multimedia audio/visual files such as voice and video recordings (*e.g.*, .wav, .mpeg, and .avi), for which all ESI items shall be produced in native format, unless the document contains material as to which redaction is necessary due to a claim of privilege. In the case of personal database (*e.g.*, MS Access) files containing confidential or privileged information, the parties shall meet and confer to determine the appropriate form of production. In addition to producing the above file types in

native format, the producing party shall produce a single-page TIFF slip sheet indicating that a native item was produced and providing the file name of the natively produced document (*e.g.*, "Data.xlsx"). The corresponding load file shall include NativeFileLink information for each native file that is produced. Further, the parties agree to meet and confer prior to producing native file types other than MS Excel, MS Access, and multimedia audio/visual file types such as .wav, .mpeg and .avi. Prior to processing non-standard native files for production, the producing party shall disclose the file type to, and meet and confer with, the requesting party on a reasonably useable production format. The parties agree to meet and confer to the extent that there is data in database application files, such as SQL and SAP, to determine the best reasonable form of production of usable data. Through the pendency of this Litigation, the producing party shall exercise reasonable, good faith efforts to maintain all preserved and collected native files in a manner that does not materially alter or modify the file or the metadata.

D. **Requests for Other Native Files:** Other than as specifically set forth above, a producing party need not produce documents in native format. If a party would like a particular document produced in native format, and this order does not require the production of that document in its native format, the party making such a request shall bear the burden of showing that good cause exists for the document to be produced in its native format. The requesting party will provide a specific Bates range for documents it wishes to be produced in native format.

E. **Bates Numbering**

1. All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length (0-padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document.

2. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

3. The producing party will brand all TIFF images in the lower right-hand corner with its corresponding bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

4. **Non-Responsive Attachments**: The Parties agree that fully non-responsive attachments to responsive parent documents need not be produced; however, non-responsive parent documents must be produced if they contain any responsive attachments. Where the Parties withhold a fully non-responsive attachment, they will produce a TIFF slip sheet with a Bates Number in place of the attachment. No extracted text need be provided. The TIFF slip sheet for

3

        each withheld attachment will state "Family Member Withheld as Non-Responsive." The requesting party has the right to request the production of any attachment withheld solely on the basis of non-responsiveness. For such attachments, the requesting Party shall provide a list of Bates numbers of any attachment sought to be produced and shall explain why it believes the attachment is responsive. The producing Party will not unreasonably deny requests to produce such attachments. Any requesting Party shall provide a Bates number to a producing Party of any document produced that suggests that a responsive attachment was excluded from production as a non-responsive attachment. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this provision prior to involving the Court.

F. **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) in ESI that have been maintained in the ordinary course of business should be preserved.

G. **Load Files:** All production items will be provided with a delimited data file or "load file." Each party will designate its preferred load file format. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. Each deliverable volume should limit directory contents to approximately 1000 files per folder.

H. **Color:** Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting party may, in good faith, request that the document or ESI item be produced in its original colors, and such a request will not be unreasonably denied by the producing party. The production of documents and/or ESI in color shall be made in TIFF format or in an alternative format, such as single page JPEG format, that provides sufficient quality for the review of these documents and/or ESI. All requirements for productions stated in this Stipulation and Order regarding productions in TIFF format would apply to any productions of documents and/or ESI in color made in such an alternative format.

I. **Confidentiality Designations:** If a particular paper document or ESI item qualifies for confidential treatment pursuant to the terms of a Protective Order entered by the Court in this litigation, or has been redacted in accordance with applicable law or Court order, the designation shall be shown both on the face of all TIFFs pertaining to such item/document, and in the appropriate data field in the load file.

J. **Production Media & Protocol:** A producing party may produce documents on readily accessible, electronic FTP link, computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted and the producing

party will provide a decryption key to the Requesting Party in a communication separate from the production itself. The Production Media for document productions shall be either via secure FTP link provided via email at the time a production letter is emailed, or a CD-ROM, DVD, external hard drive (with standard PC compatible interface), or USB drive, so long as such production media is sent no slower than overnight delivery via FedEx, UPS, or USPS. Each item of Production Media (or in the case of productions made via FTP link, each production transmittal letter) shall include: (1) text referencing that it was produced in *In re IV Saline Solution Antitrust Litigation*, (2) the type of materials on the media (e.g., "Documents," "OCR Text," "Objective Coding," etc.), (3) the production date, (4) the Bates number range of the materials contained on such production media item, and (5) a short description of the categories of information in the production (*e.g.*, Custodian X's email, centralized purchasing files, etc.). Any replacement Production Media will cross-reference the original Production Media and clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced. The ESI Liaisons shall designate the appropriate physical address for productions that are produced on physical media.

K.  **Paper Document Production:** The parties agree that responsive paper documents will be scanned and produced electronically rather than in paper format. A party need not OCR paper documents it produces, however, to the extent that a producing Party OCRs paper documents for its own purposes, then it shall produce such resulting OCR or other searchable text at no additional cost to the requesting Party. A producing Party will inform receiving parties which documents are paper documents by, for example, identifying the paper documents in the transmittal letter accompanying their production or populating a coding field named "Paper Document" marked with a "Y" or "Yes."

   1.  **Unitization of Paper Documents:** Paper documents should be logically unitized for production. Therefore, when scanning Paper Documents for production, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records.

   2.  **File/Binder Structures:**

       a.  **Identification:** Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

   3.  **Custodian Identification**: The parties will utilize best efforts to ensure that paper records for a particular Document Custodian are produced in consecutive Bates stamp order.

### III. ESI METADATA FORMAT AND PROCESSING ISSUES

A. **System Files:** ESI productions may be de-nisted using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. Other file types may be added to the list of excluded files by agreement of the parties.

B. **Metadata Fields and Processing:**

1. No party shall modify the date or time as contained in any original ESI.

2. **Time zone:** Unless otherwise agreed, to the extent reasonably practicable, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized for document productions to either (a) Universal Coordinated Time (UTC) or (b) a single adopted time zone across a producing party's productions. Where a date and time field have been standardized to UTC during a producing party's processing of ESI for this litigation, the parties agree to produce a corresponding metadata field indicating the local time zone of the custodian of the document. The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect dates and times that are hard-coded text within a file. Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text.

3. **Auto date/time stamps:** To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

4. Except as otherwise set forth in this Stipulation, *infra*, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can be extracted from a document.

5. The parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Confidentiality, (f) Redacted (Y/N), (g) Custodian, and (h) NativeLink fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

C. **Embedded Objects:** Microsoft Excel (.xls) spreadsheets embedded in Microsoft Word documents will be extracted as separate documents and treated like attachments to the document. Other file types embedded in documents may be extracted as separate documents and treated like attachments to the document, but the parties agree that such embedded objects, including, but not limited to, logos, icons,

6

        emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing party (*e.g.*, such embedded objects may be produced within the document itself, rather than as separate attachments).

    D.    **Known Software Files (NIST).** Known software files identified in the National Software Reference Library database maintained by the National Institute of Standards and Technology need not be collected or produced.

    E.    **Compressed Files:** Compression file types (*i.e.*, .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

    F.    **Password-Protected or Encrypted Files:** With respect to any ESI items that are password-protected or encrypted, the producing party will take reasonable steps based on industry standards to break the protection so that the document can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing party shall advise the requesting party. To the extent that there is any ESI that cannot be reviewed because proprietary software is necessary to view the ESI, the parties shall meet and confer regarding next steps, if any, with respect to such ESI.

    G.    **Exception Logs:** Producing parties agree to review the "exception logs" created by e-discovery processing software to summarize ESI that cannot be searched, reviewed, produced, and/or imaged. If a producing party cannot resolve issues with searching, reviewing, and/or producing files on its exception log that appear to be relevant based on the available metadata fields or information, then it shall provide notice to the requesting party.

**IV.**    **DOCUMENT SOURCE AND SEARCH NEGOTIATIONS**

    A.    **Schedule for Negotiations**: In the event of any order by the Court denying Defendants' motions to dismiss, the parties will meet and confer and, within 35 days of the Court's order, will either submit an agreed upon Case Management Order or, for any provisions they are unable to agree upon, submit a joint letter brief identifying the areas of agreement and disagreement.

    B.    **General Parameters Regarding Culling ESI**

        1.    **Search Process Parameters:** The parties will meet and confer regarding the parameters for the culling of documents with the goal of transparency up front before a party has invested resources in a particular search methodology. *See* 6/28/2017 Hrg. Tr. (ECF Dkt. No. 104) at pp. 6-7.

        2.    **Structured Data (Aka, Enterprise Databases)**: To the extent the parties agree that a response to discovery requires production of discoverable

electronic information contained in a Structured Database, the parties shall meet and confer regarding a set of queries to be made for discoverable information.

3. **De-duplication:**

   a. A Party may, but is not required to, produce exact duplicates of a responsive document. Documents are exact duplicates if they have matching MD5 or SHA-1 hash values. Parties may de-duplicate stand-alone documents or entire document families horizontally (also referred to as globally) across custodians.

   b. Parties also may de-duplicate stand-alone documents or entire document families using near-duplicate identification technology, provided, however, that only documents identified by such technology as 100% near-duplicates shall be de-duplicated. For purposes of this paragraph, 100% near-duplicates are documents that have identical text content, embedded files, and attachments. Prior to a producing party using the de-duplication technology referred to in this paragraph, it will provide information regarding such de-duplication technology to the requesting party.

   c. When comparing document families, if a parent document is an exact duplicate or 100% near-duplicate but one or more attachments or embedded files are not exact duplicates or 100% near-duplicates, neither the attachments or embedded files, nor the parent document, will be de-duplicated.

   d. Attachments to emails shall not be eliminated from their parent emails by de-duplication. Where a stand-alone document is an exact duplicate or 100% near-duplicate of an email attachment, the email attachment must be produced and the stand-alone document may be de-duplicated. However, the file path and duplicate custodian information for the stand-alone document must be produced.

   e. All custodians who were in possession of a de-duplicated document must be identified in the DupCustodian metadata field specified in Appendix 1. In the event of rolling productions of documents or ESI items, the producing party will supplement the load files with updated DupCustodian information as needed.

4. **Email Threading:** Where multiple email messages are part of a single "thread," a Party is only required to produce the most inclusive message and need not produce earlier, less inclusive email messages that are fully contained, including attachments, within the most inclusive email message. For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email

        message will be considered less inclusive email messages that need not be produced; if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced.

5. **Email Domains:** A party may propose the exclusion from any ESI search process certain uniquely identifiable categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails, retailer advertising, and newsletters or alerts from non-industry sources.

C. **Custodial Cellphone & Personal Communications Data**

1. **Cellphones:** For Document Custodians agreed on by the parties or ordered by the Court, a producing party will take reasonable steps to identify whether any unique responsive communications are located on any cellphones in the possession, custody, or control of the producing party. Unless agreed otherwise, the following shall govern the review and production of unique, responsive, and non-privileged communications for Cellphone-based data for the agreed or ordered Document Custodians with respect to cellphones in the possession, custody, or control of the producing party.

    a. Prior to any culling of the Cellphone data, a producing party will disclose the following to the extent reasonably possible: (1) to extent not already provided, a list of cell phone number(s) used by the Document Custodian for work purposes, if any, (2) the name of the phone carrier that provided service for each identified phone number, (3) the type of phone, including brand and model number, if known, (4) a list of installed communications-related applications on the Document Custodian's Cellphone, including ephemeral messaging applications (*e.g.*, SnapChat, Confide, Signal), Facebook Messenger, and other such applications if such applications are used for work purposes; and (5) whether or not the producing party claims that a cellphone(s) used by the Document Custodian for work purposes is not within its possession, custody, or control.

    b. A producing party will search the following sources of information on a Cellphone, to the extent reasonably available, to identify unique, responsive, discoverable information:

        i. **Cellphone Call and Voicemail Logs:** The logs of any calls made/received and voicemails left on a Cellphone that the Document Custodian used for work purposes, if any, if the Cellphone is in the possession, custody, or control of a producing party.

9

        ii.    **Text Messages:** All text messages and/or iMessages on the Cellphone device used for work purposes or contained in available backups/archives associated with the device, if any, if the Cellphone is in the possession, custody, or control of a producing party.

    2.    **"Contacts":** A Document Custodian's relevant contacts (e.g., MS Outlook Contacts or cellphone-based contacts) will be exported to MS Excel (or .csv) with all reasonably available metadata fields. A producing party has no obligation to disclose contacts that are irrelevant to the claims in this case.

    3.    **Social Media Data:** If a Document Custodian confirms that he or she (1) used Social Media for business purposes and (2) used that Social Media to communicate with an employee of another Defendant or otherwise regarding a subject relevant to this litigation and included within a Request for Production, subject to objections to that Request, then the requested communication(s) must be produced if it is reasonably accessible, in the producing party's possession, custody, or control, and not withheld as privileged. The parties shall meet and confer to the extent there are any issues with respect to the format of such Social Media data.

## V. CLAIMS OF PRIVILEGE AND REDACTIONS

    A.    **Production of Privilege Logs:** Except as provided otherwise below, for any document withheld in its entirety or produced but redacted, the producing party will produce privilege/redaction logs in MS Excel format or any other format that permits electronic sorting and searching. A producing party will produce a privilege/redaction log within 60 days of substantial completion of documents.

    B.    **Exclusions from Logging Potentially Privileged Documents:** The following categories of documents do not need to be contained on a parties' initial privilege log, unless good cause exists to require that a party do so.

        1.    Information generated after November 3, 2016, except as provided in § V(A)(1). This provision does not apply to third parties to this litigation.

        2.    Any communications exclusively between a producing party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

        3.    Any privileged materials or work product created by or specifically at the direction of a Party's outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

C. **Privilege Log Requirements**

1. **Privilege Log Detail:** A privilege log must be detailed enough to enable other parties to assess the applicability of the privilege asserted and should include: (1) the name of each individual from whom or to whom a document and any attachments were sent (including which persons are lawyers); (2) the date of the document; (3) the file type of the document; (4) the Bates numbers of the documents (where applicable), (5) the nature of the privilege asserted; and (6) a description of the subject matter of the information contained in the document in sufficient detail to determine if legal advice was sought or received or if the document constitutes attorney work product. A unique privilege log identification number should be assigned to each document.

2. **Email chains:** Subject to § V(D), a party asserting privilege over a chain of emails must assert privilege separately on the privilege log as to each responsive portion of the email chain and produce a redacted copy of such emails to the extent some portions are only partially privileged. However, a party asserting privilege over a chain of emails may produce only a single redacted copy of such email chain consistent with § V(D) to the extent some portions are only partially privileged.

3. **Challenges to Privilege Claims:** Following the receipt of a privilege/redaction log, a requesting party may identify, in writing, the particular documents that it believes require further explanation. The producing party must respond to such a request within 14 days. If a party challenges a request for further information, the parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court.

D. **Redactions**

1. **Documents Redacted for Privilege:** As an initial production matter, redacted documents need not be logged as long as (a) for emails, the objective metadata (*i.e.*, to, from, cc, bcc, recipients, date and time (unless the privilege or protection is contained in these fields) is not redacted; and (b) for both email and non-email documents, the basis for the redaction (including the general nature of the privilege asserted) either can be discerned from the non-redacted content or is otherwise noted on the face of the document. In accordance with this paragraph, the producing party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information. For redacted documents where the subject matter is not decipherable as a result of redactions, a description of the contents of the document that is sufficient to understand the subject matter of the document may be requested. Pursuant to Section V(C) above, after receipt of the production, the requesting Party may request in good faith that the producing Party create a privilege log for specific redacted documents. Electronic Documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

11

      2. **"Relevancy" Redactions:** To avoid unnecessary delays and expense associated with the review and production of information in this Litigation, the parties will not make any redactions based upon the purported relevancy of a document.

## VI.   MISCELLANEOUS PROVISIONS

   A.   **Time Limitations**: Absent express agreement between the parties or order of the Court, no information generated before January 1, 2011 or after November 3, 2016 need be collected, searched, or produced in this matter, except that the parties will meet and confer regarding the time period for structured data (*e.g.*, Defendants' saline-related sales data) necessary for expert analysis in this matter.

   B.   **Categories of Inaccessible ESI:** Unless good cause is shown to the contrary, the Parties further agree that the collection and production of the following would not be proportional to the needs of the case:

      a.   "Deleted," "slack," "fragmented," or "unallocated" data on hard drives;

      b.   Random access memory (RAM) or other ephemeral data;

      c.   Online access data such as temporary internet files, history, cache, cookies, etc.;

      d.   Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

      e.   Server, system, or network logs;

      f.   Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, and that are substantially duplicative of data that are more accessible elsewhere;

      g.   Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

   C.   **Objections Preserved:** Nothing in this protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI. Nothing in this Stipulation and Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

    D.    **Modifications:**  Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical production of documents or ESI.

**SO ORDERED.**

Dated:  7/10/2017

                                                JOHN J. THARP, JR.
                                              United States District Judge

**Appendix 1: ESI Metadata and Coding Fields**

| Field Name[1] | Populated For (*Email, Edoc, Paper, or All*) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production bates number of the last document of the family). |
| Custodian | All | Custodian name (ex. John Doe). |
| DupCustodian | Email, Edoc | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| Folder or Relative Path | All ESI Items | Folder location of email container files such as PST and NSF and the internal path of the email within those files. |
| Dupe Folder or Relative Path | Edoc | Duplicate folder location of duplicate standalone Edoc. |
| Hash Value | Email, Edoc | The MD5 or SHA-1 hash value. |
| NativeFile | Edoc (if applicable) | Native File Link. |
| Message ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Conversation Index | Email | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Edoc | Date the document was modified. |
| TimeSent | Email | Time email was sent. |
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. |

---

[1] Field names can vary from system to system and even between different versions of systems. Thus, parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this stipulation.

| Field Name[1] | Populated For *(Email, Edoc, Paper, or All)* | Field Description |
|---|---|---|
| FileName | Edoc | File name of the edoc. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | Email, Edoc | File extension of the document. |
| TextPath | Email, Edoc | Relative path to the document level text file specified in Paragraph II(B) of this ESI Stipulation and Order. |
| Redacted | All | "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Paper | Paper | "Y" or "Yes" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |